**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**KEVIN M. KNOCH,**

            **Plaintiff,**

**-vs-**                                                **Case No.  6:07-cv-1645-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

            **Defendant.**
_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for disability insurance benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

### *I. BACKGROUND*

**A.   Procedural History**

Plaintiff filed for a period of disability, and SSI benefits on July 15, 2004, alleging an onset of disability on July 2, 2004, due to the residual effects of mitral valve replacement and right internal carotid endarterectomy, history of heel fractures, and peripheral vascular disease with right carotid

artery stenosis. R. 16. His application was denied initially and upon reconsideration. Plaintiff requested a hearing, which was held on December 6, 2006, before Administrative Law Judge JoAnn L. Anderson (hereinafter referred to as "ALJ"). R. 21. In a decision dated May 23, 2007, the ALJ found Plaintiff not disabled as defined under the Act through the date of the decision. R. 21. Plaintiff timely filed a Request for Review of the ALJ's decision, and the Appeals Council denied Plaintiff's request on September 13, 2007. R. 4. Plaintiff filed this action for judicial review on October 15, 2007. Doc. No. 1.

### B.      Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of mitral valve replacement, rheumatic heart disease, and post right carotid endarterectomy. R. 23, 25. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from residuals of mitral valve replacement and right internal carotid endarterectomy, history of heel fractures in 1995 and peripheral vascular disease with right carotid artery stenosis, which were "severe" medically determinable impairments but did not have an impairment severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 16, Findings 3-4. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work, with no work at heights or on ladders or scaffolds. R. 16, Finding 5. In making this determination, the ALJ found that Plaintiff's allegations regarding his limitations were not supported to the extent that they precluded all work activity for the reasons set forth in the body of the decision. R. 19. Based on Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 20, Finding 6. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R.

Pt. 404, Subpt. P, App. 2, and concluded that Plaintiff could perform work existing in significant numbers in the national economy. R. 20, Finding 10. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 21, Finding 11.

Plaintiff now asserts three main points of error. First, he argues that the ALJ erred by finding he had the RFC to perform sedentary work contrary to treating doctors' statements. Second, he claims the ALJ erred by failing to credit Plaintiff's complaints that he suffered from non-exertional impairments and obtaining vocational expert[1] testimony. Third, Plaintiff contends the Appeals Council abused its discretion in failing to remand the case based on newly submitted evidence that indicated Plaintiff was determined by the State of Florida, Department of Vocational Rehabilitation office to be unable to perform either full-time or part-time work. For the reasons that follow, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560

---

[1]Although a vocational expert was present at the hearing, the ALJ opted not to ask a hypothetical of him. R. 333. He completed a work experience summary that is included in the record. *See* R. 116 (Ex. 11E).

(11th Cir. 1995), (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *III. ANALYSIS*

#### A.     **Residual functional capacity**

Plaintiff claims that the ALJ should not have found him able to perform sedentary work in light of limitations assigned by his treating physician, and internist, and his cardiologist. The Commissioner contends that the ALJ properly evaluated the evidence from these sources.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments

is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff contends that the ALJ did not offer any reason for not crediting Dr. Srivastava's opinion. Doc. No. 15 at 9. Dr. Srivastava, Plaintiff's internist from January to November 2006, opined in a November 8, 2006 letter that Plaintiff was disabled by his medical conditions, including heart problems. R. 259. The letter reads in its entirety:

> This is to certify that Mr. Kevin Knoch has been under my medical care. He has been disabled due to his medical conditions. I am writing this letter as an update to his medical condition at his request.
>
> He is a known case of valvular heart disease and had open heart valve surgery in 1995. *Since that time he has improved* but remains symptomatic with various episodes of *chest pain, shortness of breath*. He has had numerous evaluations by different cardiologist [sic] and doctors.
>
> He is not able to lift his arms beyond 90 degrees. Due to his underlying medical problems he is depressed and is on treatment for same. This depression compounds his problem.

R. 259 (emphasis added). Actually, the ALJ specifically did cite Dr. Srivastava's November 8, 2006 report "that the claimant's condition was symptomatic but had improved." R. 19 (citing Ex. 13F - R. 259).

Plaintiff also argues that the ALJ cited inadequate reasons in discounting the opinion of the cardiologist Dr. Agamasu who, in March 2007, examined Plaintiff for chest pains at the request of Dr. Srivastava. R. 270-75. In a March 28, 2007 cardiac residual functional capacity form completed

-5-

by Dr. Agamasu (based on three months of treatment from December 2006 to March 2007), his diagnosis of Plaintiff was chest pain, shortness of breath, and peripheral vascular disease. R. 270-73. A March 2007 nuclear stress test evaluated by Dr. Agamasu showed normal myocardial perfusion, no reversible defect. R. 274. A different issue arises as to Plaintiff's recent carotid angiogram (also dated January 2007), which revealed critical stenosis involving the right carotid artery. R. 269. This issue is dealt with in detail below.

Plaintiff incorrectly states that Dr. Agamasu began treating Plaintiff in December 2005 (Doc. No. 15 at 14), when it was actually not until December 2006. This is an important distinction in that Dr. Scott repeatedly told Plaintiff to consult a cardiologist during 2004 and 2005, yet he did not seek treatment from Dr. Agamasu until December 2006. R. 270. Moreover, there are no medical records of Plaintiff's treatment by *any doctor at all* from April 2005 (R. 213) to January 2006 (R. 267); and none from a cardiologist between October 2004 (Dr. David Joseph – R. 170) until December 2006 with Dr. Agamasu. Testing by Dr. Joseph, a specialist in clinical and interventional cardiology, on October 8, 2004 indicated that Plaintiff had normal heart rate and blood pressure response to exercise, and the nuclear scan was negative for ischemia or infarction; there was no evidence that he had had a myocardial infarction in the past and the prosthetic valve was noted to be functioning normally. R. 170. Plaintiff did not see another cardiologist (according to the Record and Plaintiff's own testimony[2]) for more than two years. A notation in Dr. Srivastana's November 2006 treatment notes says, "Plaintiff refuses to go to Dr. Hippel." R. 260. Other notes indicate that "Plaintiff complained of occasional shortness of breath at night. States was on vauceril inhaler years ago and it helped."

---

[2] "Hippel was the old one and before that was Joseph. But Joseph did a whole bunch of tests, and I didn't get anywhere, so I said I'm going to go to Hippel, and then Hippel didn't do anything either, and so I said forget it, and I just went ahead and my family physician has just been doing the test to check." R. 294.

R. 261. Plaintiff's lack of treatment for cardiac symptoms during this crucial time period (2004 to December 2006) belies his assertions of symptoms from 2004 to December 2006 of cardiac problems.

The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

The Court finds that the ALJ did adequately explain her reasons for discounting the opinions of disability as of the alleged onset date by Plaintiff's physicians, Dr. Srivastava and Dr. Agamasu,

-7-

as part of her credibility decision on Plaintiff's subjective complaints of chest pain and shortness of breath:

> The medical record supports the claimant's complaints but not the extent that they preclude all work activity and are therefore disabling. After the claimant's valve replacement and endarterectomy in the 1990s, he continued to work until 2004 at medium to heavy occupations. A nuclear stress test on September 28, 2004, demonstrated good exercise tolerance with a normal heart rate and blood pressure. On October 8, 2004, Dr. Joseph noted that the claimant had also undergone an echocardiogram which had shown normal left ventricular (LV) systolic function with an ejection fraction of 55%-60% in addition to only mild LV dilatation and merely mild LV hypertrophy. Dr. Scott observed that the claimant exhibited a clear chest, full range of extremity motions, good extremity strength, intact sensation and symmetrical deep tendon reflexes on July 14, 2004. Dr. Scott detected no indications of chest rhonchi, rales or wheezes. On November 8, 2006, Dr. Srivastava reported that the claimant's condition was symptomatic but had improved. Dr. Agamasu performed a treadmill stress test, an EKG and myocardial perfusion test on the claimant on February 28, 2007. These test demonstrated normal myocardial perfusion with no reversible defect, normal LV wall motion with an ejection fraction of 53% and fair to good exercise tolerance with no indications of ischemia. Recent testing in January 2007 has revealed peripheral vascular disease and right carotid artery stenosis. These are new findings. They have been considered in assessing the claimant's residual functional capacity but they do not related back to the alleged onset of disability date. The claimant also testified that he has only used Nitroglycerin for chest pain about four times since his 1995 valve replacement.

R. 19.

The ALJ specifically found that recent testing – in January 2007 – almost three years after the alleged onset date – "has revealed peripheral vascular disease and right carotid artery stenosis." R. 19. However, she qualified the January 2007 findings[3] as new ones, "considered in assessing the claimant's residual functional capacity" but not relating back to the alleged onset of disability date. R. 19.

---

[3] The January 12, 2007 a lower extremity Doppler and carotid Doppler study was performed at the request of Dr. Srivastava. R. 268-69. The lower extremity arterial doppler showed impaired ABI bilaterally, consistent with moderate peripheral vascular disease and possibly diffuse lower extremity disease. R. 268. The carotid doppler study showed evidence of critical stenosis in the right internal carotid artery and in the right external carotid artery (80-95%) and evidence of mild stenosis in the left external carotid artery (40-60%), as suggested by the velocity. R. 268.

Dr. Agamasu opined that the patient's shortness of breath and chest pains were also related to the underlying valvular disease diastolic dysfunction and probable chronic obstructive pulmonary disease; he would be referred to see another doctor with respect to the abnormal carotid angiogram with focal 60% stenosis. R. 275. Along with peripheral vascular disease, Dr. Agamasu's assessment referred to Plaintiff's "old" inferior myocardial infarction by EKG and rheumatic heart disease, and tobacco abuse. R. 275. He educated Plaintiff "regarding smoking cessation" and "encouraged the patient to comply with his medications." R. 275.

The ALJ's determination as to Plaintiff's condition *at the alleged onset date* was supported by substantial evidence. The treating physicians' records themselves report Plaintiff's improvement from his original symptoms from the 1995 valve replacement. The September 2004 (two months after the alleged onset date) notes from Dr. Scott report that Plaintiff "denies problems or complaints and has not made his appointment with cardiology despite urging the patient to follow up with the cardiologist since he had been having chest pain." R. 216. Dr. Scott further urged Plaintiff noting, "The patient again is informed that he needs to make an appointment with cardiology to evaluate chest pain . . . This is not to be put off. . . . He is additionally to use his nitroglycerin sublingual for chest pain." R. 216; 215 (chest pain related to upper respiratory infection in February and March 2005); 213 (chest tightness went away once he took cough medicine and has not had to use any nitroglycerin). The ALJ cited Plaintiff's testimony that he had only used nitroglycerin four times since 1995. R. 19. Thus, it is clear that the medical evidence did not support Plaintiff's position that the disability opinions of Dr. Srivastavana and Dr. Agamusa related back to 2004. Moreover, Dr. Agamusa limited his opinion to no earlier than December 2006. The Cardiac RFC form that he completed stated that December 18, **2006** was "the earliest date that the description of symptoms and

limitations in this questionnaire applies." R. 273 (emphasis added). Accordingly, good cause existed for the ALJ's discounting of the treating physician's opinions and Plaintiff's statements as they relate to Plaintiff's condition as of the July 2004 alleged onset date.

However, analysis of the case does not end as of the alleged onset date. Plaintiff correctly argues that the ALJ's analysis of Dr. Agamasu's March 2007 assessment is "very minimal" and is not based on substantial evidence. The ALJ should have determined whether a *later onset date* applied because Plaintiff's date of last insured is December 31, 2009. R. 14. The ALJ noted that "[r]ecent testing in January 2007 has revealed peripheral vascular disease and right carotid artery stenosis" and stated that "they have been considered in assessing the claimant's residual functional capacity." R. 19-20.

Plaintiff is correct that the ALJ has a duty to determine Plaintiff's disability status up until the time of the decision; even if she finds Plaintiff was not disabled on his alleged onset date, especially where the impairment is a slowly progressive condition not traumatic in origin. *See Aurednick v. Sullivan*, 733 F. Supp. 1460, 1464 (M.D. Fla. 1990) (Commissioner must attempt to infer an onset date); see also *Cox. v. Secretary of Dept. of Health and Human Services*, 521 F.Supp. 1295, 1299 (W.D. Pa. 1981) (ALJ's focus may not be limited to date of application or initial claimed disability, ALJ should make findings as to date claimant's condition deteriorated to extent that he was entitled to disability benefits).

Unfortunately, the ALJ apparently rejected Dr. Agamusa's cardiac RFC opinion *in toto* because he had "only been the claimant's physician since December 2006 and the symptoms and recent test findings . . . do not date back to 2004." R. 19-20. The ALJ only partially credited Dr. Agamusa's opinion because she "limited the claimant to sedentary work which is not *excessive*

-10-

physical activity" on the basis of Dr. Agamasu's March 19, 2007 advice to Plaintiff to "avoid *excessive* physical activity and to cease smoking." R. 19-20 (emphasis added). The ALJ's *partial* acceptance of Dr. Agamasu's March 28, 2007 RFC opinion – interpreted as rejecting only *excessive* activity – was not based on substantial evidence. The ALJ mischaracterizes Dr. Agamusa's statement; he actually noted that he was referring Plaintiff to "see Dr. Thompson with respect to the abnormal carotid angiogram with focal 60% stenosis. The patient is instructed to avoid excessive physical activity until he has been evaluated by Dr. Thompson." R. 275. Dr. Agamusa did not state that Plaintiff could *work* except for performing excessive physical activity, as the ALJ applied this statement.

By the date that Dr. Agamusa completed the Cardiac RFC form, March 28, 2007, his opinion of Plaintiff's RFC was based on objective medical testing (done in January 2007) which showed that Plaintiff had an abnormal carotid angiogram with focal 60% stenosis. R. 275. There was evidence of critical stenosis in the right internal carotid artery and in the right external carotid artery (80-95%). R. 269. Dr. Agamusa opined that Plaintiff could sit/stand/walk less than two hours per eight-hour day, could lift no amount of weight, and would need unscheduled breaks. R. 272. The ALJ's rejection of Dr. Agamusa's entire opinion was not based on substantial evidence.

Plaintiff claims that his cardiac problems caused non-exertional limitations of chest pain, dizziness, and shortness of breath, precluding the application of the grids and requiring VE testimony. Doc. No. 15 at 16-18. Because the ALJ erred in failing to properly weigh the evidence of Plaintiff's cardiac condition at the time of Dr. Agamusa's RFC opinion, the Court need not reach the issue of whether a VE testimony should have been obtained; however, on remand, the Court expects the ALJ to call a VE, as appropriate, and to consider Plaintiff's evidence from the State of Florida, Department

of Vocational Rehabilitations Office, dated August 8, 2007 (that was not submitted before the ALJ's December 5, 2007 hearing).

### *CONCLUSION*

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence. Accordingly, the Court **REVERSES and REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on December 22, 2008.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record